**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

RAVEN L. JETER, SR.,

        Plaintiff,

      v.

OHIO DEPARTMENT OF REHABILITATION
AND CORRECTION, et al.,

        Defendants.

Case No. 1:17-cv-756

Barrett, J.
Bowman, M.J.

## REPORT AND RECOMMENDATION

### I.    Procedural Background

Plaintiff, an incarcerated individual who proceeds *pro se*, tendered a complaint against multiple defendants on November 9, 2017.[1]  Pursuant to local practice, this case was referred to the undersigned magistrate judge.  On January 3, 2018, the undersigned granted Plaintiff leave to proceed *in forma pauperis* and directed service of the complaint against certain Defendants. While recommending the dismissal of most claims and Defendants, the undersigned determined that an Eighth Amendment claim relating to a July 24, 2017 incident against four Defendants and a related deliberate indifference to medical needs claim against a fifth Defendant should be permitted to proceed.  (*See*

---

[1]This is the third civil rights case pursued by Plaintiff.  *See Jeter v. Ahmed*, Case No. 1:13-cv-244-HRW-SKB (case closed after summary judgment granted to Defendants); *Jeter v. Lt. Sample*, Case No. 4:13-cv-896, 2015 WL 874801 (N.D. Ohio Feb 27, 2015) (same).

Docs. 2, 4).

Following service on the Defendants, the Court entered a calendar order directing the parties to complete discovery by November 30, 2018 and to file any dispositive motions by January 31, 2019. (Doc. 12). The dispositive motion deadline subsequently was extended to March 6, 2019. (Notation order of 2/28/19). During the period of time in which discovery remained open, Plaintiff engaged in a vigorous motion practice, filing both non-dispositive and discovery-related motions as well as three separate motions seeking a temporary restraining order and/or preliminary injunctive relief. (Docs. 15, 20, 25). The Court granted several motions seeking extensions of time, but denied numerous substantive motions. (*See* Docs. 7, 14, 18, 28, 33, 34, 35).

On March 6, 2019, the five Defendants jointly filed a motion for summary judgment on all claims. (Doc. 40). Plaintiff filed a memorandum in opposition to Defendants' motion, to which Defendants filed no reply. For the reasons discussed below, the undersigned now recommends that Defendants' motion be granted and that this case be dismissed.

## II. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348

(1986). The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986).

Once the moving party has met its burden of production, the nonmoving party cannot rest on the pleadings, but must present significant probative evidence in support of his case to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 248-49. The mere scintilla of evidence to support the nonmoving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party. *Id.* at 252. As Plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999). However, his status as a pro se litigant does not alter his burden of supporting his factual assertions with admissible evidence when faced with a summary judgment motion. *Maston v. Montgomery Cnty. Jail Med. Staff Personnel*, 832 F. Supp. 2d 846, 851-52 (S.D. Ohio 2011) (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. Appx. 482, 485 (6th Cir. 2010)).

### III.    Analysis of Defendants' Pending Motion

### A.  Findings of Fact

Defendants' motion includes proposed undisputed facts, supported by appropriate citations to the record. Plaintiff does not respond directly to most of those Proposed Undisputed Facts, (Doc. 40 at 3–5), leaving them largely uncontested. Instead, he indirectly responds, through the filing of a sworn Declaration attached to his response in

opposition, to a small number of facts.[2]  In keeping with Rule 56 standards, where Plaintiff argues that a genuine issue of disputed fact exists that is not wholly contradicted by the record presented, the undersigned has drawn all reasonable inferences in favor of the Plaintiff.

On the date of the incident that gave rise to this lawsuit, July 24, 2017, Plaintiff was incarcerated at the Southern Ohio Correctional Facility ("SOCF"), and was housed in cell number 61 of the J2-South segregation unit.  (Doc. 41-1, Declaration of Christopher Combs at ¶4). At approximately 6:15 a.m., Defendant Correctional Officer Christopher Combs observed Plaintiff in his cell with a radio and headphones.  Plaintiff does not dispute Defendants' contention that the items are not ordinarily permitted in the disciplinary segregation unit, or that Defendant Combs identified them as contraband. Combs confiscated the items, prepared a contraband control slip, and turned over the contraband to the lieutenants' office.  (*Id.*)

Plaintiff admittedly protested, both verbally and physically, the confiscation of his radio and headphones.  (*Id.*, Combs Decl. at ¶5; *see also* Doc. 3, Complaint at 4, alleging that Plaintiff grabbed the earbuds "and began pulling back and forth with [Combs]"; Doc. 42 at 8, Jeter Declaration stating "I happened to catch the earbu[d]s and we began playing [tug of] war [until] he threaten to break my headphones if I didn't let go so I obeyed…."). In opposition to summary judgment, Plaintiff admits that his cell was subject to search

---

[2] In addition to Plaintiff's own Declaration, made under penalty of perjury, Plaintiff has attached an additional "Declaration" purportedly made by a fellow inmate, Bloomfield. (Doc. 42 at 3-4).  However, that "Declaration" has not been made under penalty of perjury and partially contradicts Plaintiff's sworn declaration. Bloomfield's unsworn statement does not create any genuine issue of material fact.

"each shift" but complains that in the days leading up to the incident his possession of the radio was not challenged. (Doc. 42 at 7). Plaintiff argues that he had received permission to retain his property in J2 based on the fact that he was not being housed for a disciplinary infraction, but instead was housed in that unit due to a lack of space for inmates on hunger strikes. (*See* Complaint at 4, alleging that Plaintiff stated to Combs: "what are you doing I'm on hunger strike not disciplinary  and was told I could have this referring to my radio and he argued I wasn't allowed to have it and would check from there we began both arguing an I finally gave in and said ok 'Fuck it'...."); *see also id.* at 3-4, alleging that radio "was approved to have by C/O Crabtree who process me to J2 from K4-66 due to my hunger strike...."; Doc. 42 at 7, Jeter Declaration).

At the time Defendant Combs seized the radio and earbuds, Plaintiff told Combs that he also had batteries, but refused the order to turn them over. (Doc. 40-4 at 14). At 7:10 a.m., based upon Plaintiff's statement, Defendants Osborne and Lute arrived at the cell in order to conduct a "shakedown" or search of the cell.  (Doc. 40-3, Osborne Decl. at ¶5).  Plaintiff admittedly refused an order to come out of his cell which "upsetted them." (Complaint at 6).  Plaintiff alleges that he refused the order because he had heard Lt. Humphries – who was in the process of escorting Inmate Bloomfield to another unit - instructing Combs, Lute and Osborne not to initiate the cell search until he returned.  (*Id.*). Regardless of the alleged grounds for his refusing to comply with the order, Defendants Osborne and Lute have filed unrebutted declarations stating that, in addition to refusing the order to come out of his cell, Plaintiff began making verbal threats that he planned to spit in an officer's face.  (Doc. 40-2, Osborne Decl. at ¶ 6, Lute Decl. at ¶ 6).

Close in time to Plaintiff's refusal to leave his cell, Sgt. Shannon Bear arrived and also directed Plaintiff to turn around and cuff up. Plaintiff's complaint alleges that he complied with Bear's directive to turn around, but continued to argue, with "the side of my head turned still trying to explain to Sgt. Bear what Lt. Humphries said…." (Complaint at 7). In contrast to the allegations of the complaint, Defendants have submitted evidentiary Declarations that Plaintiff repeatedly refused to comply with Bear's order to cuff up while continuing to make verbal threats that he would spit on an officer. (*See* Lute Decl. at ¶7). Rather than contradicting those details, Plaintiff simply maintains that Inmate Bloomfield, whose cell he alleges was adjacent to Plaintiff's, is willing to testify that "plaintiff was maced for no reason …after having words with 3 of the other defendants." (Doc. 42 at 5, Jeter Declaration). However, Plaintiff admits in his own sworn Declaration that, based upon a separate disciplinary incident involving Bloomfield, Lt. Humphries "escorted [Bloomfield] out of J2-62 to J4" prior to the time that the use-of-force incident occurred between Defendants and Jeter. (Doc. 42 at 9). Therefore, Bloomfield's alleged willingness to testify that pepper spray was used "for no reason" does not (and cannot) contradict the evidence that Plaintiff repeatedly refused an order to come out of his cell, and continued to refuse after Sgt. Bear appeared, while verbally arguing and threatening to spit on an officer.

The Defendants' Declarations state that, in addition to the reference verbal threats, Plaintiff physically acted in an aggressive manner by jumping to the front of the cell with hands clenched, as if he was going to spit on Defendant C/O Lute. Bear reacted by deploying pepper spray to Plaintiff's facial area. (Lute at ¶ 7; Osborne at ¶6). All three

officers (Bear, Lute and Osborne) simultaneously jumped back away from Plaintiff's cell to avoid being spit on. (Osborne at ¶ 6; Lute at ¶7). The video record of the incident shows two blue-shirted individuals, along with one white-shirted individual standing at the end of a hallway, conversing with the unseen Plaintiff in front of his cell. Although the Plaintiff is not visible due to the distance and camera angle, the video image is consistent with the Defendants' Declarations insofar as all three are depicted simultaneously and reactively jumping back from Plaintiff's cell.

A Use of Force investigation was undertaken following the incident. The documents related to that investigation include Sgt. Bear's use of Force summary, three incident reports, Plaintiff's statement, two medical evaluation forms, a report of security control, and two conduct reports. (Doc. 40-4). The referenced documents are consistent with the Defendants' accounts and the undisputed facts set forth above. As noted, the limited video record similarly shows the three Defendants standing at Plaintiff's cell door, followed by them suddenly jumping back in response to a perceived threat, with a near-simultaneous deployment of pepper spray by Sgt. Bear.[3]

Nurse Brandon Lindamood arrived at Plaintiff's cell within 5 minutes of the deployment of the pepper spray. (Doc. 40-6, Declaration of Lindamood at ¶4). When the nurse arrived, Plaintiff stated "I am fine, get away from my cell." (*Id.*; *see also* Doc. 40-4 at 10, Medical Exam report). Plaintiff refused the nurse's attempts to take his vital

---

[3] In a declaration filed in opposition to summary judgment, Plaintiff asserts that a better video image should have existed, from a camera lens closer to Plaintiff's J2 cell. Given the overwhelming and undisputed evidence that supports the entry of summary judgment, the lack of additional video footage (if it exists) is immaterial.

signs and refused a decontamination shower. (Osborne at ¶7).

The medical records do not reflect that Plaintiff followed up at any point immediately following the incident to seek treatment for his exposure to spray, Lindamood at ¶¶ 5-6; *see generally* Doc. 40-7, Medical records dated from July 24, 2017 through March 10, 2918). Tellingly, during a nearly 8-month period following the incident, Plaintiff completed 28 separate Health Services Requests ("HSRs"), in order to seek medical care for a variety of ailments. In addition, as part of routine care provided to an inmate on a hunger strike, two full medical assessments were completed close in time to the incident, on July 28, 2017 (four days post-incident), and on August 2, 2017 (9 days later). Plaintiff made no complaints during either the July 28 or August 2 assessments, nor were any symptoms noted; to the contrary, Plaintiff stated he was doing ok and denied any concerns. (Doc. 40-7 at 92, 95). During both the July 28 and August 2 examinations, Plaintiff's skin, respiration, and eye exam were specifically noted to be completely normal. (Doc. 40-7 at 92-96).

In the months following the incident, Plaintiff completed HSRs seeking a general check-up based upon symptoms he attributed to his ongoing hunger strike (Doc. 40-7 at 99, HSR dated 8-21-17), for a skin cream to treat "breaking out on my neck area and other spots," in order to "replace the proper skincare lotion I can't order that will help clear these itching rashes…." (Doc. 40-7 at 100, HSR 8/27/17), for dental care, and for treatment of flu symptoms. (Doc. 40-7 at 101-102, HSRs dated 9/3/17 and 9/18/17). None of the referenced requests referred to any possible symptoms from the July 24

deployment of pepper spray.[4]  On only one occasion, on September 24, 2017, did Plaintiff ever allege any health issues relating to the July 24 incident.  In that single HSR submitted two months post-incident  - and after numerous examinations confirmed the lack of any symptoms - Plaintiff sought a full eye examination based upon his assertion that since being "maced" and not "properly detox[ed]," his vision had been "get[ting] very blur[r]y for 2 minutes at a time, then I can no longer see that for & sometimes close up."  (Doc. 40-7 at 103).  However, when Plaintiff was transported to the infirmary for an eye examination on September 26, 2017, he refused the eye examination that he had requested.  (Doc. 40-7 at 67).

In sum, Plaintiff has submitted no evidence of any injury incurred as a result of the application of pepper spray in July.  Full examination records close in time to the incident document no symptoms whatsoever and normal skin, respiration, and vision.  Multiple health records in the two months following the incident fail to document any complaints attributed to the incident.  Last, the single complaint Plaintiff made on September 24, 2017 (concerning vision issues that Plaintiff subjectively blamed on the use of pepper spray two months earlier) were not substantiated, since Plaintiff refused the eye exam he had requested.

After Plaintiff's removal from his cell on July 24, 2017, the evidence submitted by Defendants reflects that his property was inventoried, and a bowl with noodles was found and seized as additional contraband.  (Combs at ¶ 6, Doc. 40-4 at 15).  Plaintiff disputes

---

[4] The single reference to "itching rashes" on 8/27/17 did not refer back to any spots or rash caused by the deployment of pepper spray more than a month earlier.

that account, alleging in his complaint that the Defendants filled out "false documentation" concerning food allegedly found in his cell in order to ruin his hunger strike. (Doc. 3 at 8). In opposition to summary judgment, Plaintiff's sworn Declaration similarly accuses the Defendants of "planting food in my cell." (Doc. 42 at 10). Although the issue of whether Plaintiff did or did not have food in his cell remains disputed,[5] the issue does not preclude the entry of summary judgment because it is not material to the Eighth Amendment claims at issue.

Following the July 24, 2019 pepper spray incident, Plaintiff was charged by Combs with violations of institutional Rule 51 (possession of contraband), Rule 61 (violating a published rule, regulation or procedure) and Rule 21 (disobeying a direct order). (Combs Decl. at ¶ 7). On August 1, 2017, the Rules Infraction Board ("RIB") found Plaintiff guilty of all three offenses. (*Id.*at ¶8; Doc. 40-4 at 17-20). In opposition to summary judgment, Plaintiff maintains that he was unaware of the RIB proceedings until his receipt of discovery in this lawsuit. (Doc. 42 at 11). Plaintiff does not deny that the existence of the proceedings, per se, but seems to imply the existence of procedural irregularities in the proceedings. However, like the minor dispute concerning the alleged discovery of a bowl of noodles in Plaintiff's cell, any concern that Plaintiff has with the RIB proceedings does not materially impact the Court's analysis of his Eighth Amendment claims.

---

[5] Plaintiff alleges that the Defendants planted the food in order to interfere with and end his hunger strike. However, Plaintiff's medical records reflect that his hunger strike continued long after the July 24, 2017 incident.

**B. The Record Fails to Support Either Objective or Subjective Components of Eighth Amendment Claims**

**1. Excessive Force Claim**

Plaintiff alleges that four Defendants (Bear, Combs, Lute, and Osborne) violated his constitutional rights to be free from excessive force when one or more Defendants deployed pepper spray into his cell on July 24, 2017.

A prisoner's right to be free from the use of excessive force by a prison official is governed by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1078 (1986). The "core judicial inquiry" whenever a prison official stands accused of using excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy,* 559 U.S. 34, 37, 130 S.Ct. 1175 (2010) (quoting *Hudson v. McMillian,* 503 U.S. 1, 7, 112 S.Ct. 995 (1992)). Excessive force claims must focus "on the nature of the force rather than the extent of the injury...." *Id.* at 34, 130 S.Ct. 1175.  In making this inquiry, the Court must consider the need for the use of force; the relationship between that need and the type and amount of the force used; the threat reasonably perceived by the responsible official; and the extent of the injury inflicted. *See Hudson,* 503 U.S. at 7, 112 S.Ct. 995; *Whitley,* 475 U.S. at 320-321, 106 S.Ct. 1078.

"While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Cordell v. McKinney,* 759 F.3d 573, 580-81 (6th Cir. 2014) (citing *Wilkins*,

11

559 U.S. at 37, 130 S.Ct. 1175). "When prison officials maliciously and sadistically use force to cause harm ... contemporary standards of decency always are violated ... whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.* (quoting *Hudson,* 503 U.S. at 9, 112 S.Ct. 995). The absence of a serious injury is nonetheless relevant as a factor that suggests whether the use of force may "plausibly have been thought necessary" in a given situation. *Id.*

Corrections officers do not violate a prisoner's Eighth Amendment rights when they use force "in a good-faith effort to maintain or restore discipline." *Roberson v. Torres,* 770 F.3d 398, 406 (6th Cir. 2014) (quoting *Jennings v. Mitchell,* 93 Fed. Appx. 723, 725 (6th Cir. 2004)). Accordingly, the Sixth Circuit has found no Eighth Amendment violation in numerous cases involving "the use of ... chemical agents against recalcitrant prisoners." *Id.* (quoting *Caldwell v. Moore,* 968 F.2d 595, 600 (6th Cir. 1992) (collecting cases)); *Jennings,* 93 Fed. Appx. at 725 ("The videotape squarely demonstrates that Jennings disobeyed repeated direct orders prior to the use of pepper spray."). *See also Thompson v. Joseph*, No. 1:12-cv-992, 2014 WL 1685918, at *7 (S.D. Ohio Apr. 29, 2014) (Report and Recommendation) (Bowman, M.J.), *adopted,* 2014 WL 2172894 (S.D. Ohio May 23, 2014) (the defendant was entitled to qualified immunity because "no reasonable officer would have understood that it violated the Eighth Amendment to reactively aim chemical spray at Plaintiff in his cell for less than two seconds (based on the videotape record), in order to force a threatening inmate to retreat and restore order."). *But see Williams v. Curtin,* 631 F.3d 380, 384 (6th Cir. 2011) (the plaintiff stated

12

a valid excessive force claim when he "allege[d] that, when instructed to 'pack up,' he inquired, 'What for, sir?,' at which point an 'assault team' entered the cell and used a chemical agent on him.").

In opposing defendant's properly supported motion for summary judgment, plaintiff must "designate specific facts in affidavits, depositions, interrogatories, or other factual material" from which a reasonable jury could find in his favor. *Maston v. Montgomery Cty. Jail Med. Staff Pers.*, 832 F.Supp.2d 846, 849 (S.D. Ohio 2011). He "cannot rest on the mere allegations of the pleadings." *Id. See also id.* at 851-52 (holding that a pro se party cannot rely on allegations or denials in unsworn filings when opposing a motion for summary judgment). Here, Plaintiff claims that the use of the pepper spray violated the Eighth Amendment's prohibition against the use of excessive force. In a second and closely related Eighth Amendment claim, Plaintiff alleges that he was denied medical attention when the Defendants retreated for three to five minutes, during which time Plaintiff was unable to breathe or see due to the pepper spray. As a result of the attack, Plaintiff alleged in his complaint that he suffered permanent physical injuries in the form of his skin peeling from his face, leaving white spots, along with similar skin issues in his genital area,[6] and continued blurred vision. Other than implying that this Court should not believe the Defendants, Plaintiff has failed to present any evidence at all to rebut or

---

[6] Despite alleging only a brief deployment of o/c spray to the left side of his face, Plaintiff testified in his deposition that droplets of spray ultimately dripped "all the way down" and left "white spots" on his genital area. (Deposition at PageID 293-96).

contradict Defendants' well-supported account of the incident in question, and his medical records contradict his allegations of injury.

Based on the record presented, Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment excessive force claim because the use of pepper spray under the circumstances constituted a reasonable use of force. The record establishes that Plaintiff: (1) physically and verbally challenged Defendant Combs' confiscation of what Combs reasonably believed to be contraband; (2) refused to comply with Combs' order to turn over additional suspected contraband (batteries); (3) refused the direct orders of Lute and Osborne to leave his cell so that they could conduct a "shakedown" search; (4) continued to "have words" with the Defendants without fully complying with Bear's order to cuff up; and (5) verbally threatened to spit on an officer. Defendants have provided evidence, in the form of both a video record and multiple documents that were contemporaneously created (Use of Force record), as well as in sworn declarations, that corroborate and fully support their account.

No reasonable fact-finder could conclude that Defendant Bear's brief and reflexive use of pepper spray, in the furtherance of maintaining officer safety and restoring discipline in the face of a defiant and recalcitrant prisoner, violated the Eighth Amendment. The test for whether the use of force violates the Eighth Amendment requires a court to determine if the defendant's conduct caused the "unnecessary and wanton infliction of pain." *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993) (citation omitted). The Eighth Amendment standard focuses on the official's "obduracy and wantonness" and asks "whether force was applied in a good faith effort to maintain or

14

restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 319–21, 106 S.Ct. 1078.

Here, the use of pepper spray by Defendant Bear was a measured response to Plaintiff's noncompliance with several orders and verbal threats. Notably, only Defendant Bear employed any force; the remaining three Defendants (Combs, Osborne, and Lute) are not alleged to have used any additional force against Plaintiff. *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078 (1986). Multiple courts including the Sixth Circuit repeatedly have held that a short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey an order. *See, e.g., Brown v. Perez*, 2017 U.S. App. LEXIS 14959, 2017 WL 2278994 (6th Cir. Apr. 17, 2017) (affirming dismissal of excessive force claim based on use of tear gas and physical restraints where inmate refused to cuff up); *Sams v. Quinn*, 2017 U.S. App. LEXIS 20558, 2017 WL 4574497 (6th Cir. Sept. 7, 2017) (same, use of taser); *Jennings v. Mitchell*, 93 Fed. Appx. 723, 725 (6th Cir. 2004) (holding that officers did not violate an inmate's Eighth Amendment rights when they pepper sprayed him after he refused to obey orders); *Davis v. Agosto*, 89 Fed. Appx. 523, 526 (6th Cir. 2004) (collecting cases); *Thomas v. Greene*, No. 99-3179, 1999 U.S. App. LEXIS 34054, 1999 WL 1253102 (6th Cir. Dec. 17, 1999) (affirming dismissal of prisoner's excessive force claim as frivolous based upon uncontested facts that he was uncooperative and threatening prior to being pepper sprayed); *White v. Fowler*, 881 F.2d 1078 (6th Cir. 1989) (Table, holding that officer was entitled to summary judgment on Plaintiff's excessive force claim even though Plaintiff was shackled when officer sprayed

him with mace on a bus because the officer needed to restore "discipline and security to the bus").

In addition to the lack of any evidence to support the subjective element of his claim, Plaintiff has failed to produce evidence to support the objective element of an Eighth Amendment claim. The objective component requires the "pain inflicted to be 'sufficiently serious'" to offend "contemporary standards of decency." *Cordell v. McKinney*, 759 F.3d at 580 (quoting *Williams v. Curtin*, 631 F.3d at 383), and *Hudson*, 503 U.S. at 8). It is true that the extent of injury is not "dispositive of whether an Eighth Amendment violation has occurred," but it is also true that such evidence "may help determine the amount of force used by the prison official." *Cordell,* 559 F.3d at 580-81. Likewise, although it is unnecessary for an inmate to show any "significant" injury, the extent of the injury remains a factor to be considered in determining whether the assertion of force was objectively unreasonable. "'When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated ... [w]hether or not significant injury is evident.'" *Hudson*, 503 U.S. at 9 (citation omitted). Yet, *Hudson* also counsels that "not ... every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. Thus, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Pelfrey v. Chambers*, 43 F.3d 1034, 1039 (6th Cir. 1995) (internal quotation marks and citation omitted).

Contrary to Plaintiff's allegations, Plaintiff suffered no more than a *de minimis* injury. Plaintiff's claim of serious or permanent injuries are flatly refuted by his

16

medical records.  Defendants also have submitted the declaration of Nurse Lindamood that pepper spray exposure is intended to cause to induce a resistant inmate to become passive and compliant by causing temporary inflammation of the respiratory tract, an intense burning sensation and swelling around the eyes, and involuntary closing of the eyes. (Doc. 40-6, Lindamood Decl. at ¶9). In nearly 20 years at SOCF, Defendant Lindamood has never observed any inmate or corrections officer experiencing peeling skin as a result of o/c spray, or any eye injury beyond temporary symptoms.  (Doc. 40-6 at ¶10). In deposition testimony that was partially consistent with Nurse Lindamood's observations, Plaintiff testified that he experienced vision loss for only "10, 15 minutes" at the time of the incident, and "can see fine now."  (Doc. 39-1 at PageID 286-87).

Contradicting Lindamood's testimony, however, Plaintiff also testified that his skin peeled after being sprayed, leaving a blemish in the form of "little white spots" for which he sought and was provided treatment by being given a little tube of "cream" by a nurse practitioner on an unspecified date.  Plaintiff admitted that he does not have spots on his face (where he was sprayed) but testified that the spray left "spots" in his genital area and "like, on the back of my head, stuff like that" when it allegedly "dripped all the way down." (Id., at PageID 293-296).  At the same time, Plaintiff testified that "the majority of [the spots] went away, but there's still spots." (*Id.*)  Aside from this self-serving testimony, no medical records have been submitted that reflect any injury or complaint of injury to Plaintiff's skin, and the records filed by Defendants confirm the lack of injury.  In short, there is no evidence that Plaintiff sustained any injuries as a result of his brief exposure to pepper spray other than the *de minimis* and temporary discomfort. *Accord, Goudlock*

*v. Blankenship*, 2016 U.S. Dist. LEXIS 89484 (N.D. Ohio July 11, 2016) (Defendants entitled to judgment where plaintiff failed to produce any evidence to contradict medical records that showed that plaintiff suffered only a small cut and complained of burning in his eyes from use of mace).

This Court's analysis in another recent pepper spray claim is fully applicable here:

> In context, the record reflects not only a *de minimis* injury, but clearly shows that the force itself was so *de minimis* as to be akin to a "push or shove" that might be second-guessed as "unnecessary" in the sanctum of a judge's chambers, but does not violate constitutional norms. *See generally, e.g., White v. Fowler*, 881 F.2d 1078 (6th Cir. 1989) (Table) (granting summary judgment to officer who sprayed mace into inmate's face even though inmate was shackled, based on evidence that action was taken to restore discipline and security on a bus); *McDougald v. Dillow*, Case No. 1:16-cv-1099 (S.D. Ohio Aug. 2, 2018) (summary judgment granted to defendants for use of pepper spray); *McDougald v. Erdos*, Case No. 1:17-cv-95, 2018 WL 3772181 (S.D. Ohio Aug. 9, 2018) (same); *Thompson v. Esham*, Case No. 1:15-cv-553, 2018 WL 398439 (S.D. Ohio Jan. 12, 2018) (summary judgment granted despite use of multiple short bursts of pepper spray); *Payne v. Gifford*, Case No. 1:16-cv-514, 2017 WL 4329631 (S.D. Ohio Sept. 5, 2017) (holding that use of pepper spray demonstrated neither subjective nor objective components of Eighth Amendment claim); *Smith v. Bigham*, 2018 WL 2100518, at *6 (S.D. Ohio 2018); *Phillips v. Sammons*, Case No. 1:16-cv-1034 at *11 (S.D. Ohio Jan. 11, 2018) (granting summary judgment where officer deployed chemical spray). In summary, the record as a whole rebuts any "reasonable" inference that either of the Defendants violated Plaintiff's constitutional rights.

*Bullocks v. Hale*, 2019 WL 2233095, at *8-9 (S.D. Ohio, 2019).

## 2. Deliberate Indifference Claim

Defendant Lindamood is also entitled to summary judgment concerning Plaintiff's additional claim that he exhibited deliberate indifference to Plaintiff's serious medical needs. Like claims of excessive force, a claim for deliberate indifference "has both

objective and subjective components." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). Plaintiff cannot prove either element of his claim against Nurse Lindamood.

It is worth noting that in a prior case, Plaintiff Jeter also claimed that prison officials were deliberately indifferent to his need for medical treatment. There, Plaintiff complained about the lack of treatment for foreign objects that he had willingly ingested. However, the defendants in that case had submitted evidence that they had followed a "standard" protocol of treatment for the ingestion of foreign objects by an inmate, and that Plaintiff had not suffered any serious harm. In the prior case, this Court explained that the lack of harm undermined the objective component of Plaintiff's claim.

> Plaintiff has failed to submit any competent medical evidence that any harm resulted from this allegedly inadequate medical treatment. Courts reviewing far more serious allegations of medical negligence have found no violation of the Eighth Amendment when no serious harm resulted. *Compare Napier v. Madison County,* 238 F.3d 739, 742 (6th Cir.2001) (no evidence that harm resulted from missed dialysis treatment).

*Jeter v. Ahmed*, 2014 WL 1961919 at *5 (S.D. Ohio 2014).

> "[C]laims based on a determination by medical personnel that medical treatment was unnecessary," require judicial determinations of whether a prisoner was treated adequately, whether any delay was harmless, or whether the prisoner had a "very minor injury for which many people outside prison would not even think of seeking medical treatment." *Blackmore v. Kalamazoo County,* 390 F.3d 890, 897–898 (6th Cir.2004) (collecting cases). The Sixth Circuit has adopted a "practical and logical" approach to such claims, holding that '[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.'" *Id.* at 898, quoting *Napier v. Madison County,* 238 F.3d 739, 742 (6th Cir.2001) (additional quotation omitted). Here, examination of the records submitted by Defendants and the lack of any contrary evidence submitted by Plaintiff confirm the absence of any possible Eighth Amendment violation.

*Id.*, at *6.

Here, a court might reasonably question whether a skin blemish or "spot" that purportedly exists in Plaintiff's nether regions, and that is unaccompanied by pain or other symptoms, constitutes a "medical need" that is sufficiently "serious" under the Eighth Amendment. Regardless of the answer to that question, the evidence presented unequivocally refutes any claim of serious harm.

Plaintiff also has failed to prove the subjective element of his deliberate indifference claim. In contrast to the allegations of the complaint, the Defendants have put forward evidence that Plaintiff was seen by Lindamood and offered a decontamination shower within five minutes of being sprayed in order to alleviate his temporary symptoms, but refused that offer. Where an inmate has received medical attention, and merely disputes the adequacy of that treatment, federal courts are reluctant to second-guess the medical judgments of prison officials and constitutionalize claims that sound in state tort law. *See Westlake v. Lucas,* 537 F.2d 857, 860 n. 5 (6th Cir.1976) (differences in judgment between an inmate and medical personnel regarding appropriate treatment are not enough to state a deliberate indifference claim). The records submitted in this case leave no doubt that Plaintiff received frequent and regular medical care following the July 2917 incident, and do not support Plaintiff's Eighth Amendment claims.

### C. Qualified Immunity

Because Plaintiff has failed to submit any evidence creating a genuine issue of fact as to whether any Defendants' use of force was reasonable under the circumstances

20

and/or whether any Defendant denied him proper medical treatment, summary judgment should be granted to all Defendants on all Eighth Amendment claims.

However, all Defendants alternatively assert that they are entitled to qualified immunity on all claims filed against them in their individual capacities. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 200–201, 121 S.Ct. 2151 (2001). The doctrine of qualified immunity is intended to balance the following competing interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231, 129 S.Ct. 808.

Qualified immunity "gives ample room for mistaken judgments by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341, 106 S.Ct. 1092 (1986)). *See also Dorsey v. Barber,* 517 F.3d 389, 394 (6th Cir. 2008). Qualified immunity applies regardless of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson*, 555 U.S. at 231, 129 S.Ct. 808.

21

Based on the record presented, the deployment of o/c spray by Sgt. Bear was "applied in a good-faith effort to maintain or restore discipline" and not "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7, 112 S.Ct. 995. No other Defendant was identified as having applied any additional force; therefore, all Defendants are entitled to qualified immunity on the excessive force claim. For similar reasons, Defendant Lindamood is entitled to qualified immunity on Plaintiff's deliberate indifference claim. Plaintiff has failed to establish that he suffered a deprivation of any clearly established statutory or constitutional right, such that any of the Defendants would have understood that his actions violated the same.

## IV. Conclusion and Recommendations

For the reasons discussed, **IT IS RECOMMENDED THAT** Defendants' motion for summary judgment (Doc. 40) be **GRANTED** and that this case be dismissed.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

RAVEN L. JETER, SR.,

        Plaintiff,

    v.

OHIO DEPARTMENT OF REHABILITATION
AND CORRECTION, et al.,

        Defendants.

Case No. 1:17-cv-756

Barrett, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

23